STATE OF NORTH CAROLINA v. JOHNNY ANTIONE BECK, JR.

No. 447A96

(Filed 24 July 1997)

## 1. Homicide § 244 (NCI4th)— noncapital first-degree murder—premeditation and deliberation—sufficiency of evidence

There was sufficient evidence of premeditation and deliberation in a noncapital first-degree murder prosecution where defendant came out of a bathroom as the victim was making a telephone call, walked toward the back door of the house, and turned and shot the victim in the back of the head; there was no evidence of provocation or that the victim was armed; defendant was seen leaning over the victim's body after shooting him in the back of the head and an additional shot was fired to the front of the victim's head at some point; the cause of death was the two gunshot wounds; there was medical testimony that either wound would have been fatal and that either would have rendered the victim unconscious almost immediately, which permits the inference that one of the shots was fired after the victim was felled; and defendant left the house, leaving the victim to die.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**STATE v. BECK**

[346 N.C. 750 (1997)]

Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.

2. Criminal Law § 279 (NCI4th Rev.)— noncapital first-degree murder—motion for recess to locate witness—denied—no abuse of discretion

The trial court did not abuse its discretion in a noncapital first-degree murder prosecution by denying defendant's motion for an overnight recess so that he could locate a witness where the only information before the court was defense counsel's unsworn statements in which he represented that he had been in contact with the witness, that the witness had originally said he would testify but was refusing to come to court, and that a sub-poena had been issued but defense counsel was uncertain whether it had been served. The unsworn statements of defendant's trial counsel are not sufficient to establish a colorable need for the person to be summoned so as to justify delaying the trial to secure the witness. Defendant's counsel here also represented that the police had five outstanding warrants for the witness but were unable to locate him, so that the likelihood of his availability the next morning was *de minimis*.

Am Jur 2d, Continuance §§ 62-81.

Right of accused to continuance because of absence of witness who is fugitive from justice. 42 ALR2d 1229.

Admissions to prevent continuance sought to secure testimony of absent witness in criminal case. 9 ALR3d 1180.

3. Criminal Law § 267 (NCI4th Rev.)— noncapital first-degree murder—motion for continuance—time to prepare defense—denied

There was no error in a noncapital first-degree murder pros-ecution in denying defendant's motion for a continuance where defendant argued that he was not afforded a reasonable time to investigate and prepare his case, but this contention was not the basis for the request at trial and was not assigned as error on appeal. Moreover, the record shows that counsel was appointed for defendant in March 1995, so that defendant and his counsel had almost six months to prepare defendant's defense.

Am Jur 2d, Continuance §§ 107-109.

STATE v. BECK

[346 N.C. 750 (1997)]

**4. Evidence and Witnesses § 222 (NCI4th)— noncapital first-degree murder—instruction on flight—no error**

The trial court did not err in a noncapital first-degree murder prosecution by giving an instruction on flight. Defendant fired two gunshots at the victim, left the residence without rendering any assistance to the victim or seeking to obtain any medical aid for him, two telephone calls were made from defendant's father's house to a local cab company, a young black male signaled the cab driver on the street where the murder occurred and requested a ride to the street where defendant resided, police vehicles were at the residence when defendant arrived, and the passenger told the cab driver to leave that area as well. This evidence permits an inference that defendant not only left the crime scene, but took steps to avoid apprehension.

**Am Jur 2d, Evidence §§ 463, 464, 472, 474.**

**5. Appeal and Error § 147 (NCI4th)— erroneous instruction—no objection to wording—no plain error**

There was no plain error in a noncapital first-degree murder prosecution where defendant contended that the trial court's instruction on flight was erroneous. Defendant was given the opportunity to object to the wording of the instruction and failed to do so.

**Am Jur 2d, Appellate Review §§ 614 et seq.**

**Sufficiency in federal court of motion in limine to preserve for appeal objection to evidence absent contemporary objection at trial. 76 ALR Fed. 619.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Barnette, J., at the 5 September 1995 Criminal Session of Superior Court, Wake County, upon a jury verdict of guilty of first-degree murder in a noncapital trial. Heard in the Supreme Court 20 March 1997.

*Michael F. Easley, Attorney General, by Teresa L. Harris, Associate Attorney General, for the State.*

*Lemuel W. Hinton for defendant-appellant.*

PARKER, Justice.

Defendant Johnny Antione Beck, Jr. was charged in a proper bill of indictment with first-degree murder in the death of Samuel Leon

STATE v. BECK

[346 N.C. 750 (1997)]

Gregory ("victim"). At the noncapital trial defendant was found guilty as charged and sentenced to life imprisonment.

The State presented evidence at trial tending to show that on 25 February 1995, Torrey Grimes left his apartment at 3544 Nealy Street in Raleigh, North Carolina, and went to the nearby apartment of Karen Ross to visit with the victim. The victim was a friend of Karen Ross' and sometimes stayed at her apartment. When Grimes arrived he saw defendant sitting on the couch. As Grimes sat down on the couch beside defendant, defendant got up and walked to the bathroom. The victim asked to use Grimes' cordless telephone. As the victim stood using the telephone, defendant returned from the bathroom, "walked like he was going out the back door," turned around, and shot the victim in the back of the head.

Grimes saw the victim fall and saw defendant leaning over the victim. Grimes ran to the front door, looked back, saw defendant going to the back door, went back and picked up his cordless phone, and then ran from the scene.

Excel Wilson, a cab driver for the Acme Cab Company, received a dispatch on 25 February to go to 4032 Nealy Street. Johnny Beck, Sr., defendant's father, resided at this address. Telephone records indicated that two telephone calls were made from defendant's father's house to Acme Cab Company. Three men were standing on the corner when Wilson turned onto Nealy Street. One of the men waved Wilson down and said, "I'm the one." Wilson picked up a young black male who told Wilson to take him to Melvid Court. As Wilson left Nealy Street, he passed several police cars heading to the Nealy Street area at a "high rate of speed." When Wilson turned into the Melvid Court area, he observed more police cars. Wilson told his passenger that the police were there and asked the man what he was going to do. The man said, "Leave." Wilson left the area and eventually dropped the man off on another street. Wilson told police officers that he did not get a good look at his passenger. At the time of the murder, defendant resided at 2440 Melvid Court, Apartment B.

Dr. James Edwards testified that he performed an autopsy on the victim and determined the cause of death to be two gunshot wounds. Dr. Edwards testified that either wound would have been fatal and that either wound would have rendered the victim unconscious almost immediately.

Defendant did not present any evidence.

**[1]** Defendant brings forth four assignments of error. Defendant first argues that the trial court erred by denying his motion to dismiss the first-degree murder charge. Defendant contends there was insufficient evidence to show premeditation and deliberation. We disagree.

When a defendant moves for dismissal based on insufficiency of the evidence, the trial court need determine only whether the State has presented substantial evidence demonstrating each essential element of the offense charged and that the defendant was the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

Defendant was convicted of first-degree murder based on the theory of premeditation and deliberation. "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836.

In defining premeditation and deliberation, this Court has stated:

> Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. Among other circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Brown*, 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985) (citations omitted), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986),

*overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), *quoted in State v. Scott*, 343 N.C. 313, 341, 471 S.E.2d 605, 621-22 (1996).

In the instant case the State presented substantial evidence to support a reasonable inference that defendant committed this murder with premeditation and deliberation. As the victim was making a phone call, defendant came out of the bathroom and walked toward the back door of the house. Defendant then turned around and shot the victim in the back of the head. The record is devoid of any evidence of provocation by the victim or evidence that the victim was armed with a weapon.

The manner in which the victim was killed also establishes premeditation and deliberation. After shooting the victim in the back of the head, defendant was seen leaning over the victim's body. At some point an additional shot was fired to the front of the victim's head. The cause of the victim's death was determined to be the two gunshot wounds. Dr. Edwards testified that either wound would have been fatal and that either wound would have rendered the victim unconscious almost immediately. The evidence thus permits the inference that one of the shots was fired after the victim was felled.

Defendant's actions after the shooting also show premeditation and deliberation. Defendant left the house, leaving the victim to die. Taking the evidence in the light most favorable to the State, the trial court did not err in denying defendant's motion to dismiss the charge of first-degree murder.

[2] In defendant's second assignment of error, he contends the trial court committed prejudicial error by denying defendant's motion for an overnight recess so that defendant could locate a witness necessary for his defense. At trial defendant was granted a two-hour recess at the conclusion of the State's evidence. After the recess defendant requested that the trial court issue a bench warrant for Patrick Swain, a defense witness. Defense counsel informed the court that he had subpoenaed Swain, that he had been in contact with Swain, and that Swain had earlier indicated he would testify in this matter, but that defense counsel had spoken with Swain within the last few hours and Swain had refused to appear. Defense counsel later conceded to the court that he was not able to determine whether the Raleigh Police Department had actually served the subpoena on Swain. The trial judge denied defendant's request to issue a bench warrant for Swain.

Defendant, through counsel, informed the court that it wanted to "get in the record a motion to recess" until the next morning in order to have "a last opportunity" to get Swain to testify. Defense counsel stated that Swain would testify that he was the person who caught the cab at 4032 Nealy Street the night of the murder. The trial judge denied defendant's request for an overnight recess, stating, "If you had a served subpoena, then I would have been more inclined to allow your request until [Swain] could be brought to court. I have no indication that he's even available, except what you've told me, much less served with a subpoena." Defendant contends that the failure of the trial court to grant his requested recess violated his Sixth Amendment right under the United States Constitution to have compulsory process to obtain witnesses and his right under the North Carolina Constitution to confront his accusers with witnesses and other testimony pursuant to Article I, Section 23. We disagree.

A motion for a continuance is ordinarily addressed to the sound discretion of the trial judge, and the ruling will not be disturbed absent a showing of abuse of discretion. *State v. Poole,* 305 N.C. 308, 318, 289 S.E.2d 335, 341 (1982). However, when a motion to continue raises a constitutional issue, the trial court's action upon it involves a question of law which is fully reviewable on appeal by examination of the particular circumstances revealed in the record. *State v. Branch,* 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982). If defendant demonstrates that the denial of a motion for continuance was erroneous and that the error was a constitutional violation, defendant is entitled to a new trial unless the State shows that the error was harmless beyond a reasonable doubt. *State v. Gardner,* 322 N.C. 591, 594, 369 S.E.2d 593, 596 (1988); *see also State v. Tunstall,* 334 N.C. 320, 328-29, 432 S.E.2d 331, 336-37 (1993).

Continuances should not be granted unless the reasons for the delay are fully established. *State v. McCullers,* 341 N.C. 19, 32, 460 S.E.2d 163, 170 (1995). "[A] motion for a continuance should be supported by an affidavit showing sufficient grounds for the continuance." *State v. Kuplen,* 316 N.C. 387, 403, 343 S.E.2d 793, 802 (1986). " '[A] postponement is proper if there is a belief that *material* evidence will come to light and such belief is reasonably grounded on known facts.' " *State v. Tolley,* 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (quoting *State v. Gibson,* 229 N.C. 497, 502, 50 S.E.2d 520, 524 (1948)) (alteration in original).

In the instant case defendant failed to provide any "form of detailed proof indicating sufficient grounds for further delay." *State v.*

*Searles*, 304 N.C. 149, 155, 282 S.E.2d 430, 434 (1981). The only information before the trial court was defense counsel's unsworn statements. In these statements defense counsel represented that he had been in contact with Swain, that Swain had originally said he would testify but was refusing to come to court, and that a subpoena had been issued but defense counsel was uncertain whether it had been served. Regarding service of the subpoena, we note that the record does not contain a copy of the subpoena so this Court has nothing before it from which to determine when the subpoena was issued, the name designated in the subpoena, or the address shown.

In *State v. House*, 295 N.C. 189, 244 S.E.2d 654 (1978), this Court stated:

> Furthermore, as was said in *Hoskins v. Wainwright*, 440 F.2d 69, 71 (5th Cir., 1971), "The right to compulsory process is not absolute, and a state may require that a defendant requesting such process at state expense establish some colorable need for the person to be summoned, lest the right be abused by those who would make frivolous requests."

*Id.* at 206, 244 S.E.2d at 663. The unsworn statements of defendant's trial counsel that Swain would testify that he was the person who hailed the taxi on Nealy Street the night of the murder are not sufficient to establish the "colorable need for the person to be summoned" so as to justify delaying the trial to secure the witness. *See State v. Kuplen*, 316 N.C. at 404, 343 S.E.2d at 803. Defendant's counsel also represented that the police had five outstanding warrants for Swain but were unable to locate him. Hence, the likelihood of Swain's availability the next morning was *de minimis*.

[3] Defendant also argues that he was not afforded a reasonable time to investigate and prepare his case. This contention was not the basis upon which defendant asked for the continuance at trial or assigned error on appeal. Moreover, the record shows that counsel was appointed for defendant in March 1995. Defendant and his counsel, therefore, had until defendant's trial on 5 September 1995, almost six months, to prepare defendant's defense. This argument is without merit.

Given the facts and circumstances surrounding defendant's motion for a continuance, the trial court did not err in denying the motion. This assignment of error is overruled.

[4] Defendant's third and fourth assignments of error relate to the trial court's instruction to the jury on flight. Defendant first contends the instruction on flight was not supported by the evidence.

Over defendant's objection the trial court instructed the jury as follows:

> The State contends and the defendant denies that the defendant fled. Evidence of flight may be considered by you, together with all other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of the circumstance is not sufficient in itself to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation or deliberation.

"[A] trial court may not instruct a jury on defendant's flight unless 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.' " *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 435 (1990) (*quoting State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). "Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991).

The evidence in the instant case permits an inference that defendant not only left the crime scene, but also took steps to avoid apprehension. Defendant fired two gunshots at the victim and then left the residence without rendering any assistance to the victim or seeking to obtain any medical aid for him. Thereafter, two telephone calls were made from defendant's father's house to a local cab company. A young black male signaled the cab driver on Nealy Street, where the murder occurred, and requested a ride to Melvid Court, where defendant resided. When the cab arrived at Melvid Court, police vehicles were at the residence. The passenger told the cab driver to leave that area as well. This evidence was sufficient to support the trial court's instruction on flight, and this assignment of error is overruled.

[5] Finally, defendant contends the jury instruction on flight given by the trial court was erroneous. Defendant challenges the wording of

the instruction and maintains that the trial court incorrectly stated defendant's contention regarding the issue of flight. Specifically, defendant takes issue with the trial court's statement that defendant denied that he fled. Defendant argues that this was "a gross distortion" of his position. Defendant contends he did not deny that he fled, "for that implies that he was at the murder scene when the homicide was committed."

We note initially that defendant did not specifically object to the trial court's wording of the flight instruction at trial. During the charge conference defendant objected to any instruction concerning flight on the grounds that no evidence in the record supported this instruction. After the jury had been instructed, the trial court gave each party the opportunity to make for the record any objections to the instructions given and to request any additions, deletions, or amendments to the instructions given. At this time defense counsel made a general objection to the instruction on flight.

Pursuant to N.C. R. App. P. 10(b)(2),

[a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

In the instant case defendant was given the opportunity to object to the wording of the instruction on flight and failed to do so. Defendant has not alleged, nor do we find, plain error. This assignment of error is overruled.

Defendant makes additional arguments as to this instruction which he concedes we have previously rejected. *See State v. House*, 340 N.C. 187, 456 S.E.2d 292 (1995); *State v. Jefferies*, 333 N.C. 501, 428 S.E.2d 150 (1993). Defendant has failed to offer any argument sufficient to warrant this Court's reconsideration of its prior holdings on this issue. This assignment of error is overruled.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.