STATE v. JACKSON

[128 N.C. App. 626 (1998)]

———————————

STATE OF NORTH CAROLINA v. DANIEL JUNIOR JACKSON

No. COA97-556

(Filed 17 February 1998)

1. **Criminal Law § 264 (NCI4th Rev.)— counterfeit controlled substance—discharge of attorney—continuance denied**

   In a prosecution for the sale and delivery of a counterfeit controlled substance, the trial court did not err in denying defendant's motion for a continuance after he discharged his attorney and was granted the right to proceed *pro se* where defendant only asked for "two hours or something" to prepare for trial and the record revealed that defendant had one and one-half hours during the lunch recess and an overnight recess to prepare his case.

2. **Indigent Persons § 18 (NCI4th)— waiver of counsel—conviction of substantive offenses—reappointment for habitual felon charge—good cause not shown**

   A defendant who discharged his counsel and was granted the right to proceed *pro se* failed to show "good cause" for the reappointment of counsel to represent him on an habitual felon charge after the jury returned a verdict on the underlying substantive offenses.

3. **Criminal Law § 1309 (NCI4th Rev.)— habitual felon—no-contest plea—felony conviction**

   A final judgment entered pursuant to a no contest plea after 1 July 1975 constitutes a "conviction" for purposes of the habitual felon statute. N.C.G.S. § 14-7.1.

Appeal by defendant from judgment dated 31 October 1996 by Judge A. Leon Stanback, Jr. in Durham County Superior Court. Heard in the Court of Appeals 14 January 1998.

**STATE v. JACKSON**

[128 N.C. App. 626 (1998)]

*Attorney General Michael F. Easley, by Assistant Attorney General Jill B. Hickey, for the State.*

*Mark E. Edwards, for the defendant appellant.*

GREENE, Judge.

Daniel Junior Jackson (defendant) appeals from a jury verdict finding him guilty of possession with intent to sell and deliver a counterfeit controlled substance, the sale and delivery of a counterfeit controlled substance, and of being a habitual felon.

The evidence in this case tends to show the following: On 12 December 1995, T.M. Taylor (Taylor), an undercover drug investigator for the Durham Police Department, was purchasing drugs from a man named Darryl Brown when another individual approached Taylor and offered to sell him drugs. This second individual was identified by Taylor as the defendant. Taylor asked the defendant to sell him ten dollars worth of either powder or rock cocaine. The defendant took the money and later returned with an item similarly shaped to rock cocaine. At the State Bureau of Investigation crime lab, the item tested negative for cocaine or any other controlled substance.

Just before the trial began on 30 October 1996, the defendant's counsel, Russell Hollers (Hollers), at the request of the defendant, filed a motion to withdraw from the case. In open court the defendant indicated to the trial court that "it would be appropriate for [Hollers] to resign from the case . . . ." The defendant then requested permission to proceed *pro se*, and this request was granted after the trial court made certain inquiries of the defendant. The defendant requested a continuance of the case for "two hours, or something, just to review [certain] notes . . . ." In denying the defendant's motion to continue, the trial court stated:

> We're going on with this trial, and you will have—now, there will be times when you are calling for a jury and when we will take recesses, so you can use that time as you see fit, and we'll also be breaking for lunch. So you will have time in between these proceedings to review your notes.

After the jury was selected, the court recessed one hour and thirty minutes for lunch before the opening statements were presented. After the opening statements, the State presented its evidence and then the trial court recessed for the day. The next morning the State completed its case and the defendant presented his evidence.

STATE v. JACKSON

[128 N.C. App. 626 (1998)]

Following the jury's guilty verdict for the substantive charges, but before the beginning of the habitual felon stage of the trial, the defendant requested the trial court to reappoint him counsel. The trial court denied this request.

In the habitual felon phase of the trial, the State offered certified copies of the defendant's plea transcripts entered in three former convictions. One of the underlying convictions was based on a no contest plea entered in April 1987. The jury found the defendant guilty of being a habitual felon and the trial court sentenced the defendant to a minimum of 107 months and a maximum of 138 months of imprisonment.

In the record on appeal the defendant assigned error to "[t]he Court's denial of [his] motion for appointment of new counsel," "[t]he Court's denial of [his] motion to continue to allow him to prepare," "[t]he Court's denial of [his] motion for appointment of counsel for the habitual felony [sic] charge," and "[t]he Court's failure to enter a judgment of non-suit on the charge of being a habitual felon on the basis that one of the prior convictions . . . was based on a plea of no contest." In the defendant's brief to this Court he makes arguments in support of each of the above assignments of error, with the exception of his assignment relating to the "appointment of new counsel." He does argue, in support of this assignment of error, that the trial court failed to comply with N.C. Gen. Stat. § 15A-1242 in allowing him to proceed *pro se.*

---

The issues are whether: (I) the trial court erred in denying the defendant's request for a continuance; (II) the defendant had a right to the reappointment of counsel in the habitual felon phase of the trial; and (III) a prior "no contest plea" can constitute a "conviction" within the meaning of N.C. Gen. Stat. § 14-7.1.

I

[1] Criminal defendants have a constitutional right to the assistance of counsel in conducting their defense. *State v. Lamb,* 103 N.C. App. 646, 647, 406 S.E.2d 654, 655 (1991) (quoting *State v. Gerald,* 304 N.C. 511, 516, 284 S.E.2d 312, 316 (1981)). Implicit in this right to counsel is the constitutional right to refuse the assistance of counsel and proceed *pro se. Id.* A denial of a motion to continue by a defendant proceeding *pro se,* who has just discharged his attorney, therefore implicates constitutional rights and is reversible error if the defendant shows that the denial of the motion was erroneous, unless the State

demonstrates that the error was harmless beyond a reasonable doubt. *See State v. Beck*, 346 N.C. 750, 756, 487 S.E.2d 751, 755 (1997). Appellate review of a trial court's denial of such a motion to continue is reviewable *de novo* upon appeal. *Id.*

In this case, the defendant has failed to demonstrate that the denial of his motion to continue was error. The defendant only asked for "two hours, or something" to prepare for the trial. The record reveals that he had one and one-half hours during the lunch recess and an overnight recess to prepare his case.[1]

## II

**[2]** The defendant next argues that the trial court erred in not reappointing him counsel for the habitual felon hearing. We disagree. A waiver of counsel or decision to proceed *pro se* is "good and sufficient until the trial [is] finally terminated, 'unless the defendant himself makes known to the court that he desires to withdraw the waiver' " and makes a showing that the change of mind to proceed (with or without an attorney) was for some "good cause." *State v. Clark*, 33 N.C. App. 628, 630, 235 S.E.2d 884, 886 (1977) (quoting *State v. Smith*, 27 N.C. App. 379, 380-81, 219 S.E.2d 277, 279 (1975)). To hold otherwise would allow a defendant " 'to control the course of litigation and sidetrack the trial.' " *Id.*

In this case the defendant's request for the reappointment of counsel occurred after the jury returned a verdict on the underlying substantive offenses and before the hearing on the habitual felon charge. Because an adjudication on a habitual felon charge "is necessarily ancillary to a pending prosecution for the 'principal,' or substantive, felony," *State v. Allen*, 292 N.C. 431, 434, 233 S.E.2d 585, 587 (1977), the defendant's trial was not yet fully terminated within the meaning of *Clark*. Thus, the defendant had the burden of showing "good cause" for his request. He made no such showing.

## III

**[3]** N.C. Gen. Stat. § 14-7.1 defines a habitual felon as "any person who has been convicted of or pled guilty to three felony offenses in

1. We do not intend to suggest that a defendant proceeding *pro se* can adequately prepare his own defense to a serious criminal charge in two hours nor do we intend to suggest that a defendant who decides to proceed *pro se*, after discharging his attorney, is entitled as a matter of law to any continuance. Each request for continuance must be considered on its own merits. We address here only whether the denial of this defendant's specific motion to continue was error.

any federal court or state court in the United States or combination thereof . . . ." N.C.G.S. § 14-7.1 (1993). "[A] felony offense is defined as an offense which is a felony under the laws of the State or other sovereign wherein a plea of guilty was entered or a conviction was returned regardless of the sentence actually imposed." *Id.*

The question, therefore, is whether a no contest plea is a "conviction" within the meaning of section 14-7.1. Although the statute does not define "conviction" and there is no case law defining the term in the context of the habitual felon statute, our courts have consistently defined "conviction" in the context of other criminal statutes to include "no contest" pleas. *See State v. Outlaw*, 326 N.C. 467, 469, 390 S.E.2d 336, 338 (1990) (a no contest plea constitutes a conviction for impeachment purposes); *Davis v. Hiatt*, 326 N.C. 462, 465, 390 S.E.2d 338, 340 (1990) (no contest plea qualifies as a prior conviction for the purpose of revoking an individual's driver's license); *State v. Holden*, 321 N.C. 125, 162, 362 S.E.2d 513, 536 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988) (no contest plea can be used as aggravating factor for death penalty sentencing). Furthermore, legal dictionaries define "conviction" to include final judgments entered upon a "plea of *nolo contendere*." *Black's Law Dictionary* 333 (6th ed. 1990) Accordingly, we read "conviction" in the context of section 14-7.1 to include final judgments entered upon the entry of a no contest plea, provided the no contest plea was entered after 1 July 1975. *See State v. Petty*, 100 N.C. App. 465, 468, 397 S.E.2d 337, 340 (1990) (holding that conviction resulting from a no contest plea, entered prior to July 1975, could not be used to adjudicate habitual felon status under section 14-7.1); *see also Outlaw*, 326 N.C. 467, 469, 390 S.E.2d 336, 338 (N.C. Gen. Stat. § 15A-1022(c), effective on 1 July 1975, requires trial court, prior to entry of final judgment, to make a finding that there exists a factual basis for a no contest plea).

Finally, we do not address the defendant's argument, asserted in his brief, that the trial court failed to comply with section 15A-1242.[2] This argument is not supported by an assignment of error in the

2. N.C. Gen. Stat. § 15A-1242, among other things, requires the trial judge, prior to allowing a defendant to proceed "without the assistance of counsel," to be "satisfied that the defendant . . . [c]omprehends the nature of the charges and proceedings and the range of permissible punishments." The range of "permissible punishments" refers to the minimum and maximum punishments available as shown on the felony punishment and misdemeanor punishment charts in N.C. Gen. Stat. § 15A-1340.17 and N.C. Gen. Stat. § 15A-1340.23 respectively.

record. N.C.R. App. P. 10; *State v. Thomas*, 332 N.C. 544, 554, 423 S.E.2d 75, 80 (1992).

No error.

Judges JOHN and MARTIN, Mark D., concur.