An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-769

NORTH CAROLINA COURT OF APPEALS

Filed: 31 December 2014

MILDRED WILLIAMS,
    Plaintiff-Appellant,

v.                                    Mecklenburg County
                                      No. 10 CVS 9849
SHONDU LAMAR LYNCH, TYISHA
STAFFORD, THOMAS C. RUFF, JR.
d/b/a THOMAS C. RUFF, JR. &
ASSOCIATES, and FIRST CITIZENS
BANK & TRUST COMPANY,
    Defendants-Appellees.


Appeal by Plaintiff from judgment entered 28 October 2013 and orders entered 30 December 2013 by Judge Eric L. Levinson in Superior Court, Mecklenburg County. Heard in the Court of Appeals 8 December 2014.


> *Tin, Fulton, Walker & Owen, PLLC, by John W. Gresham; and Vann Law Firm, P.A., by Christopher M. Vann, for Plaintiff-Appellant.*

> *Poyner Spruill LLP, by Cynthia L. Van Horne and E. Fitzgerald Parnell, III, for Defendant-Appellee Thomas C. Ruff, Jr. d/b/a Thomas C. Ruff, Jr. & Associates, Defendant-Appellee.*


McGEE, Chief Judge.

Mildred Williams ("Plaintiff") was living in Florida in February 2004 when Shondu Lamar Lynch ("Lynch") contacted her concerning real property Plaintiff owned in Charlotte at 300 Wednesbury Boulevard ("the property"). Lynch represented himself as a realtor, and he convinced Plaintiff to allow him to place the property on the market for sale and to act as her agent. Plaintiff signed a general power of attorney on 4 February 2004, whereby Plaintiff gave Lynch authority to "act in [her] name, place and stead in any way which [she] [herself] could do, if [she] were personally present, with respect to" real estate transactions, "to the extent that [she] [was] permitted by law to act through an agent[.]" This general power of attorney was signed and notarized, and the blank space in the box next to the section granting Lynch powers to conduct real estate transactions for Plaintiff was initialed by Plaintiff. In a blank space following a section labeled "Other Terms[,]" the following wording was handwritten: "Further in regards to the real estate property located at 300 Wednesbury Blvd, I Mildred William[s] give full authority to Shondu Lynch aforemention [sic] property and receive[d] monitery [sic] proceeds should be made payable to Shondu Lynch." The blank space labeled "Other Terms" did not have a box for initialing, and Williams did not initial that space. There was a section

labeled "Durable Provision:" with a blank space in a block to the left that could be initialed to make this general power of attorney durable, but the block space was not initialed.

An offer to purchase was made on the property, and Thomas C. Ruff, Jr. ("Defendant") was retained as the closing attorney. Defendant testified that when reading the general power of attorney he "noticed that the section . . . provided for durability . . . wasn't initialed, so [he] felt that would be more appropriate that it be and, as a result of that conclusion, prepared and had sent to" Plaintiff a limited power of attorney with a durability provision. This limited power of attorney, notarized 7 April 2004, stated in relevant part:

> I, [Plaintiff], pursuant to the provisions of the N.C. General Statutes [§] 32A-1 et seq., do hereby appoint SHONDU LYNCH, as my true and lawful attorney-in-fact, which appointment shall continue in effect notwithstanding any incapacity or mental incompetence of mine which occurs after the date of execution and acknowledgment hereof;
>
> AND I do empower the said SHONDU LYNCH, as my attorney-in-fact to act for me and in my name, place, and stead to sign any documents and otherwise deal with any and all real property or any interest in any of the same which I may now or hereafter own, and especially to execute all necessary documents in order to convey good and marketable title to such property, and to do any act or thing and enter into any such transaction as he may see fit and in his discretion find to be for my best interest to facilitate such sale; and I do further

> empower my said attorney-in-fact with full power and authority to do any and every act for me, and in my name, that I could do personally present and under no disability relating to such sale.

This limited power of attorney was specifically limited to Plaintiff's property at 300 Wednesbury Boulevard. Plaintiff signed this limited power of attorney and her signature was notarized on 7 April 2004. There are three documents relevant to this appeal — the general power of attorney, the limited power of attorney, and a third document that was notarized on 7 April 2004 by the same notary who notarized the limited power of attorney and was given to Defendant prior to closing. This third document ("the unsigned authorization") stated: "I, Mildred Mercedes Williams give authorization to Attorney Tom Ruff, Charlotte, NC, to make proceeds from closing payable to Shondu Lynch for the property located at 300 Wednesbury Blvd. Charlotte, NC 28269." The document was typed except for the names "Mildred Mercedes Williams," and "Shondu Lynch," which were handwritten in underlined blank spaces. The unsigned authorization was not signed by Plaintiff or anyone else other than the notary who had notarized it.

The sale of the property proceeded, and a check for the net proceeds of $135,597.03 was drawn on Defendant's trust account and made payable to "Mildred Williams" at the 8 April 2004

closing. This check was delivered to Lynch, who took the check to First Citizens Bank ("First Citizens") and attempted to negotiate the check. First Citizens refused to negotiate the check in the manner requested by Lynch. At the request of First Citizens and Lynch, Defendant had one of his employees modify the check so that the payee line read: "Shondu Lynch for Mildred Williams."

Lynch was able to negotiate the check at First Citizens after the alteration. Plaintiff apparently was unaware the closing had occurred until her mortgage company sent her a letter informing her the mortgage on the property had been paid in full. Plaintiff received none of the proceeds of the sale from Lynch, and she filed this action against Lynch, Defendant, and others. A default judgment was entered on 13 February 2012 against Lynch for $135,597.03, the full amount of the check.

Plaintiff voluntarily dismissed her first complaint without prejudice as to Defendant on 5 May 2009. Plaintiff filed a new complaint ("second complaint") on 5 May 2010. The second complaint alleged essentially the same facts as Plaintiff's first complaint, and alleged claims against Defendant for breach of contract, conversion, and "Professional Malpractice." Defendant filed a motion to dismiss, contending that the claims against him in the second complaint were barred by the statute

of limitations. The trial court granted Defendant's motion to dismiss on 26 August 2010. *Williams v. Lynch*, __ N.C. App. __, __, 741 S.E.2d 373, 375 (2013) ("*Williams I*").

This Court reversed the trial court's dismissal of Plaintiff's "professional malpractice," or professional negligence, claim against Defendant and remanded for trial on that claim. *Id.* at __, 741 S.E.2d at 377. Plaintiff's claim of professional negligence against Defendant was tried on 14 October 2013. Plaintiff's motion for directed verdict at the close of the evidence was denied. The jury determined that Plaintiff had not been "damaged by the professional negligence of Defendant[.]" The trial court entered judgment on 28 October 2013, ordering that Plaintiff recover nothing from Defendant, and that all claims against Defendant be dismissed. Plaintiff filed a Rule 50(b)(1) motion on 8 November 2013, requesting "that the verdict and judgment be set aside and judgment entered in her favor[,]" or, in the alternative, that she be granted a new trial. Plaintiff's motion was denied by order entered 30 December 2013. Plaintiff appeals.

I.

Plaintiff argues that the trial court erred "by not allowing the introduction of or the cross-examination of

Defendant's expert witness with 2003 Formal Ethics Opinion 7." We disagree.

Formal Ethics Opinion 7 states: "Opinion rules that a lawyer may not prepare a power of attorney for the benefit of the principal at the request of another individual or third-party payer without consulting with, exercising independent professional judgment on behalf of, and obtaining consent from the principal." 2003 Formal Ethics Opinion 7.

Defendant made a motion *in limine* to prevent Plaintiff from using Formal Ethics Opinion 7 as a basis for establishing Defendant's alleged professional negligence. The trial court heard Defendant's motion on the first day of trial. Plaintiff's attorney argued that Plaintiff was not seeking to admit the ethics opinion as part of "the basis for our claim that there was malpractice." Plaintiff argued that the professional negligence claim was based upon Defendant "being handed a check by [Lynch] saying the bank won't negotiate it, will you put my name on it, [and] at that point had the clear chance to look at three documents." Plaintiff explained the basis for the professional negligence claim was Defendant's reliance on the general power of attorney, the limited power of attorney, and the unsigned authorization, in deciding to present Lynch with a

check for the sale proceeds of the property made out to "Shondu Lynch for Mildred Williams."

"'The judge has a wide discretion to make or refuse to make advance rulings. . . .' McCormick on Evidence, Section 52 (3rd ed. 1984). The ground for reversing a court's decision on such a motion is an abuse of discretion." *Webster v. Powell*, 98 N.C. App. 432, 439, 391 S.E.2d 204, 208 (1990) (citation omitted). Plaintiff makes no argument in her brief that the trial court abused its discretion in preventing Plaintiff from cross-examining Defendant's expert with Formal Ethics Opinion 7, and makes no argument concerning how she was prejudiced *assuming arguendo* the trial court did abuse its discretion. Plaintiff merely states:

> Plaintiff should have been permitted to cross-examine the expert with this ethics opinion and ask whether the standard of care required an attorney to consult with his client and obtain her consent before preparing a power of attorney. The trial court committed error by prohibiting this line of inquiry and a new trial is required.

We hold that Plaintiff fails to show the trial court abused its discretion by granting Defendant's motion *in limine*. This argument is without merit.

## II.

Plaintiff next argues that "the trial court erred by denying Plaintiff's motion for a directed verdict and judgment

notwithstanding the verdict [JNOV] since [Defendant] had no legal authority to give the sales proceeds to Shondu Lynch." We disagree.

Our Supreme Court has stated the appropriate standard of review for a JNOV:

> [A] motion [for judgment notwithstanding the verdict] is essentially a renewal of an earlier motion for directed verdict. Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should also be granted. In considering any motion for directed verdict, the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor. This Court has also held that a motion for judgment notwithstanding the verdict is cautiously and sparingly granted. It is also elementary that the movant for [judgment notwithstanding the verdict] must make a motion for directed verdict at the close of all the evidence.

> *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337-38 (1985) (internal citations omitted). "On appeal our standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict; that is, whether the evidence was sufficient to go to

the jury."

*Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 192 N.C. App. 114, 125, 665 S.E.2d 493, 501 (2008) (citations omitted).

Plaintiff's argument on appeal is that the trial court erred in denying Plaintiff's motions because "[n]one of the three documents that [Defendant] relied upon gave him the authority to put Mr. Lynch's name on the proceeds check so that Mr. Lynch could cash it."

Both Plaintiff and Defendant presented expert testimony at trial. Plaintiff's expert, attorney Michael K. Elliott ("Elliott"), stated that he would have been suspicious because of the handwritten authorization in the general power of attorney and the unsigned authorization purporting to instruct Defendant to make the proceeds check payable to Lynch. Elliott testified: "Definitely before I wrote out a six-figure check, I would have talked to [Plaintiff] about this before I did so." Elliott opined that Defendant "breached his duty of care, or standard of care, to [Plaintiff] by altering the check to allow Mr. Lynch to leave with it." However, because we are reviewing the trial court's decision to deny Plaintiff's motion to dismiss and motion for a JNOV, we cannot consider this testimony, as it is favorable to Plaintiff. *Id*. ("In considering any motion for directed verdict . . . contradictions, conflicts, and

inconsistencies [in the evidence are] resolved in the non-movant's favor.").

Upon cross-examination, Elliott agreed that he had acknowledged in his deposition "that the matters about which [he was] opining [that Defendant should have contacted Plaintiff before altering the check] were on points of law that had not been settled by the appellate courts of North Carolina," and that "[r]easonable minds could differ as to whether or not what [he] opined . . . actually was required by the standard of care." Elliott testified at trial that his opinion had changed since his deposition, and that his belief at the time of the trial was "competent practice would have required the closing attorney to at least contact the principal before drafting another power of attorney." Elliott was asked if he agreed "that through th[e] limited power of attorney, that Mr. Lynch had the authority to receive and endorse checks for [Plaintiff.]" Elliott answered: "That's what [the limited power of attorney] says."

Defendant's expert witness, attorney Ralph McMillan ("McMillan"), testified that he believed Defendant's purpose in drafting the limited power of attorney "was to make it durable, because that's what the title companies like to see in a residential transaction to make sure that the title is good."

McMillan opined that the two powers of attorney provided the authority required for Lynch to act on Plaintiff's behalf in the manner he did. McMillan further testified that Defendant was correct under the law in relying on the two powers of attorney in taking "instructions concerning the closing in question from Shondu Lynch[,]" and that the two powers of attorney allowed Defendant to make the check payable to "Shondu Lynch for Mildred Williams." In fact, McMillan's opinion was that Defendant was compelled to alter the check in response to Lynch's request. Finally, McMillan testified that, in his expert opinion, Defendant "conformed his conduct to the applicable standard of care for Mecklenburg County, North Carolina, lawyers in 2004[.]"

When the evidence is viewed in the light most favorable to Defendant, as we are required to do, and not considering evidence favorable to Plaintiff, we hold the evidence was sufficient to submit to the jury on the claim of professional negligence, and Plaintiff's motions for directed verdict and JNOV were properly denied. This argument is without merit.

## III.

Plaintiff next argues that the trial court erred in "instructing the jury that the powers of attorney at issue authorized Mr. Lynch to direct [Defendant] to make the sales

proceeds check payable to Shondu Lynch for Mildred Williams."

We disagree.

The following discussion occurred at the preliminary charge conference:

> [PLAINTIFF'S ATTORNEY]: Now, I don't think that the court has ruled about the obligation to interpret the scope of the power of attorney, especially given the arguments we have made about them.
>
> THE COURT: I do intend to instruct them. There needs to be some modification, some language here, because I'm a little worried about some of the peremptory implications for the jury, possible peremptory instruction concerning that. But I do intend to instruct the jury that the powers of attorney standing alone would generally – would authorize an attorney to engage in this real estate transaction and to disburse moneys, but go on and say that that does not -- in some way I need to fashion a language that it does not necessarily -- this does not mean that it shields from all possible liability those –
>
> [PLAINTIFF'S ATTORNEY]: Disbursements which may be negligent.
>
> THE COURT: Right. Go on and describe in some way with a sentence or two that here the gravamen of the malpractice claim is that this later document gave rise or should have given rise or that an ordinary lawyer or blah, blah, blah, would have taken or done – taken some measure or something. I don't plan to just stop, because to do so is [to] suggest to the jury that they should, frankly, find –
>
> [PLAINTIFF'S ATTORNEY]: It sounds like that language would be what we could accept.

THE COURT: So it is my – I haven't gone back – I didn't share this peremptory concern I have with you before. I'm looking at everything in the totality, but . . . it's my current thought that, yes, it's my intention to tell them that those powers of attorney would authorize a lawyer, and that they were valid, you know, on the four corners of that document, however I put it in some way, and I'm going to work on the language here, but then go on and add a sentence, et cetera, that says that this case is about this, without telling them again what they should do or not do or try to give them some language that doesn't infer to them or push them one way or the other.

[PLAINTIFF'S ATTORNEY]: Right. A neutral –

THE COURT: All right.

The following day the trial court presented its proposed instruction to the parties. In her brief, Plaintiff argues:

The trial court instructed the jury that "both the general power of attorney and the limited power of attorney authorize Mr. Lynch to direct [Defendant] to make the sales proceeds check payable to Shondu Lynch for Mildred Williams." This statement was an incorrect statement of the law. There is no authority in either the general power of attorney or the limited power of attorney for [Defendant] to alter the check. . . . . The trial court's instruction misled the jury and mandates a new trial.

When the trial court asked Plaintiff to state any objection to the instructions for the record, Plaintiff stated:

[PLAINTIFF'S ATTORNEY]: Your Honor, on the instructions with regard to the general and

limited power are valid, because as we signed them, et cetera, that paragraph? As we have indicated, we do not believe, with the first power of attorney, the general power of attorney, that that instruction, we believe, is incorrect. I believe the second is that that one is clearly more -- that one is less, so. With regard to the -- and, therefore, that would include the next paragraph, because that is where you set out that the law allows them to do that.

The trial court's entire instruction on this matter was as follows:

Ladies and gentlemen, as a preliminary matter I offer the following two instructions or conclusions to you that you must accept as true for the purposes of your deliberation. First, both the general power of attorney and the limited power of attorney are valid because [Plaintiff] signed them. They both appear to be duly notarized, and because a power of attorney is effective whether or not it has been recorded.

Second, both the general power of attorney and the limited power of attorney authorize Mr. Lynch to direct [Defendant] to make the sales proceeds check payable to Shondu Lynch for [Plaintiff]. Ladies and gentlemen, North Carolina law provides unless, one, a lawyer has actual knowledge that her writing is not a valid power of attorney, or, two, the action taken or to be taken by the attorney-in-fact, who in this case was Shondu Lynch, is beyond the apparent power or authority of, granted in the power-of-attorney writing, a lawyer who in good faith relies on a writing that on its face is duly signed, acknowledged, and otherwise appears reputable and that purports to confer a power of attorney, durable or otherwise, shall be protected to the full extent of the

powers and authority that . . . reasonably appear to be granted to the attorney-in-fact designated in the power of attorney, and no lawyer dealing in good faith with the attorney-in-fact shall be held responsible for any breach of fiduciary duty by that attorney-in-fact, including any breach of loyalty, any act of self-dealing, or any misapplication of money or other property paid or transferred as directed by that attorney-in-fact. An attorney is not required to inquire as to the effectiveness of a power of attorney before he relies on it.

Ladies and gentlemen, notwithstanding these two instructions or conclusions, which, again, you must accept as true for purposes of your deliberations, I instruct you that these two instructions or conclusions are not dispositive of whether, once [the unsigned authorization] was presented to [Defendant], his failure to contact Plaintiff to obtain her approval constituted negligence.

Although it is difficult to follow Plaintiff's objection, the apparent stated objection was to the following portion of the instruction: "both the general power of attorney and the limited power of attorney are valid because Mrs. Williams signed them. They both appear to be duly notarized, and because a power of attorney is effective whether or not it has been recorded." Further, Plaintiff was apparently only objecting to this portion of the instruction as it related to the general power of attorney, not the limited power of attorney. Plaintiff further stated: "that would include the next paragraph, because

that is where you set out that the law allows them to do that."
This portion of the objection seems to reference the second
paragraph, which includes the portion of the instruction
objected to on appeal: That "both the general power of attorney
and the limited power of attorney authorize Mr. Lynch to direct
[Defendant] to make the sales proceeds check payable to Shondu
Lynch for Mildred Williams." However, Plaintiff's objection at
trial did not specifically address this portion of the
instruction.

In similar circumstances, our Supreme Court has held that

> [p]ursuant to N.C. R. App. P. 10(b)(2),

>> [a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

>> In the instant case defendant was given the opportunity to object to the wording of the instruction on flight and failed to do so. Defendant has not alleged, nor do we find, plain error. This assignment of error is overruled.

*State v. Beck*, 346 N.C. 750, 759, 487 S.E.2d 751, 757 (1997).
Because Plaintiff failed to properly and distinctly object to
the relevant portion of the instruction at trial, and because

Plaintiff has not argued plain error, this argument has not been preserved for appellate review. This argument is dismissed.

IV.

Finally, Plaintiff argues that the trial court erred in instructing the jury on insulating negligence. We disagree.

Plaintiff contends that "[t]he negligent conduct of [Defendant] was placing Mr. Lynch's name on the check without first communicating with [Plaintiff] or having any instruction in the powers of attorney to do so. This negligence was completely independent from Mr. Lynch's conduct in stealing the money from Plaintiff." However, the fact that Defendant's alleged negligent act was completed before Lynch's illegal act is not dispositive. Defendant's alleged negligent act and the Plaintiff's claim of professional negligence against Defendant are not synonymous. Plaintiff was not damaged at the time Defendant altered the check, Plaintiff was damaged when Lynch withdrew her money and kept it for himself.

> An essential element of [professional negligence] is a showing that [the] defendant proximately caused [the plaintiff's] damages. *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985) (professional malpractice claim against attorney requires existence of proximate cause)[.]
>
> Proximate cause is defined as "a cause which in natural and continuous sequence, *unbroken by any new and independent cause*, produced

> the plaintiff's injuries, and without which
> the injuries would not have occurred[.]"

*Self v. Yelton*, 201 N.C. App. 653, 659, 688 S.E.2d 34, 38 (2010) (citations omitted) (emphasis added). Therefore, in this case Plaintiff had to prove not only that Defendant committed a negligent act, but that this negligent act was a proximate cause of Plaintiff's damages. Insulating negligence, if proven, can serve to sever that link between a defendant's negligent act and the plaintiff's damages. Insulating negligence is a method of proving that a "new and independent cause" broke the causal link between a defendant's negligent act and the plaintiff's damages.

Plaintiff fails to make the appropriate argument on appeal. Plaintiff should have argued that no evidence was presented at trial that any act of Lynch broke the causal link between Defendant's alleged negligence and Plaintiff's damages. Because Plaintiff failed to do so, this argument is abandoned.[1] *Beck*, 346 N.C. at 759, 487 S.E.2d at 757. Further, Plaintiff does not indicate in her brief that she objected to this instruction at trial, nor does she argue that any error in the instruction amounted to plain error. *Id*. This argument is dismissed.

V.

---

[1] Plaintiff's general statement that "[t]here was no evidence in the record to support the instruction of insulating negligence" does not suffice.

We do not address Plaintiff's argument concerning contributory negligence because the jury determined that Defendant did not commit professional negligence and therefore did not reach the issue of contributory negligence. Plaintiff concedes in her brief "that if Defendant is the prevailing party then he is entitled to costs as provided in the order." Therefore, we do not address her argument related to costs.

No error.

Judges STEELMAN and BELL concur.

Report per Rule 30(e).