STATE OF NORTH CAROLINA v. HASSAN ATAEI-KACHUEI

No. 8310SC585

(Filed 1 May 1984)

1. **Weapons and Firearms § 3— discharging firearm into occupied vehicle—detaining felon—instructions on justification**

In a prosecution for discharging a firearm into an occupied motor vehicle, the trial court erred in refusing to give defendant's requested instruction that defendant would be justified in discharging a firearm into an occupied motor vehicle if (1) he had probable cause to believe that the person detained had committed a felony in his presence or was attempting to escape from the commission of a felony with the use of a deadly weapon, and (2) he attempted to detain the person in a reasonable manner considering the offense involved and the circumstances of the detention, where there was evidence from which the jury could find that defendant had grounds to believe that the person in the automobile had committed in his presence the felonies of larceny from the person and assault with a deadly weapon [an automobile] inflicting serious injury, that defendant was merely trying to detain the person in the automobile until the police arrived, and that the manner of detention was reasonable under the circumstances.

2. **Homicide § 30.3— first-degree murder case—submission of involuntary man-slaughter as prejudicial error**

> In a prosecution for first-degree murder in which the evidence showed that defendant intentionally fired a shot into a vehicle occupied by the deceased, the trial court committed prejudicial error in submitting involuntary manslaughter to the jury since involuntary manslaughter was not a lesser included offense of first-degree murder under the circumstances of this case, and where the jury found defendant guilty of involuntary manslaughter and acquitted defendant of all other degrees of homicide, defendant is entitled to be discharged.

APPEAL by defendant from *Britt, Samuel E., Judge.* Judgment entered 18 March 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 6 February 1984.

Defendant, tried for first-degree murder and discharging a firearm into an occupied motor vehicle, was convicted of involuntary manslaughter and discharging a firearm into occupied property. The evidence at trial tended to show the following:

The defendant owns The Goodtime Ice Cream Company situated in Raleigh. The company's ice cream is sold from trucks by independent salesmen; the company leases the trucks to them and supplies them with merchandise at wholesale prices and the salesmen collect from their customers. Salesmen usually pay in advance for their daily stock of merchandise, but when they cannot the company supplies them anyway if they agree to pay out of the sale proceeds. Salesmen in debt to the company for other reasons are permitted to continue working if they agree to turn in all or a certain part of their receipts until their debt is paid. Records are kept for each salesman, who turns in a form daily accounting for his receipts, business and expenses. When a debtor salesman keeps company money for his personal use, that is recorded on the form under "incidentals." When not in use, the company's trucks are parked in a fenced in lot next to the business and the employees park their cars in a space beyond the fence.

The victim, Donald J. Becker, a company salesman, had not worked for about ten days and owed the company several hundred dollars. The exact amount of his debt has not been established because his records were incomplete. On 9 June 1982, Becker reported to work at 1 p.m. and returned with his truck about 9 p.m., but turned in no money. He told defendant that he had taken the sale proceeds home. Defendant and Becker dis-

cussed the day's work, his debt to the company, and that Becker was quitting. Defendant, who had a $100 bill in his hand, received from another driver, asked Becker to complete his records by stating on the form what the day's receipts were and that they had been used as "incidentals," and by stating on another form what he owed the company altogether. After Becker completed these forms, signed them, and gave them to defendant, he suddenly struck defendant with his fist, grabbed the $100 bill and signed forms, and ran out of the building. Defendant got a pistol out of his desk and gave chase. Becker went through the enclosed parking lot, where three other employees, one of whom was defendant's wife, Kim, were; those employees saw defendant chasing Becker and heard him yell, "stop him, catch him, or something." Defendant's wife, Kim, tried to grab and hold Becker; but he passed on through the truck parking lot toward his nearby car and she followed. While Becker was starting his car, she placed herself behind it, but moved out of the way when Becker backed the car toward her. She then ran in front of the vehicle, but Becker changed gears, drove forward, and knocked her to the ground with the car. At that moment, defendant ran into the parking lot with his pistol, hollering all the while. First he got in front of the automobile, then he moved eight or ten feet to the driver's side, and upon the car continuing to move, shot one time; and as the car continued moving away, he shot twice more. One bullet, after breaking the car window, passed through Becker's lung and heart and he died before completely leaving the scene. The other two bullets were not found. Defendant had never shot that pistol or any other gun before.

When the police arrived defendant told them that the victim had tried to rob him and he had shot him. In a search of the scene, the forms filled out and signed by Becker were found, but the $100 was not. Though defendant testified, he had no memory of the shooting and therefore could not testify as to what his intentions were. He did testify, however, that he got the gun because he was "scared to go out with nothing in my hand," he thought having the gun would cause the deceased not to harm him or his wife, and he wanted to give Becker a copy of the lease and get his copy of the papers Becker had.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch, for the State.*

*Tharrington, Smith and Hargrove, by Wade M. Smith, Roger W. Smith and Douglas E. Kingsbery, for the defendant appellant.*

PHILLIPS, Judge.

[1] In regard to the discharging a firearm charge, defendant requested that the court specially instruct the jury as follows:

The defendant would be justified in discharging a firearm into an occupied motor vehicle if in doing so he:

1. had probable cause to believe that the person detained has committed a felony in his presence or was attempting to escape from the commission of a felony with the use of a deadly weapon,

or (sic) "and"

2. attempted to detain the person in a reasonable manner considering the offense involved and the circumstances of the detention.

The denial of this request is the basis for defendant's first assignment of error.

Under G.S. 15A-1232 it is the duty of the trial court to "declare and explain the law arising on the evidence." In determining whether an instruction requested by a defendant in a criminal case is supported by evidence, and therefore should be given, at least in substance, the evidence must be interpreted in the light most favorable to him. In making this determination the trial judge is concerned only with the sufficiency of the evidence; its credibility is for the jury to determine, not the court. *State v. Watkins,* 283 N.C. 504, 196 S.E. 2d 750 (1973).

G.S. 15A-404 in pertinent part provides:

(b) When Detention Permitted.— A private person may detain another person when he has probable cause to believe that the person detained has committed in his presence:

(1) A felony,

(2) A breach of the peace,

(3) A crime involving physical injury to another person, or

(4) A crime involving theft or destruction of property.

(c) Manner of Detention.—The detention must be in a reasonable manner considering the offense involved and the circumstances of the detention.

Thus, defendant was entitled to the requested instruction only if there was evidence that: (1) defendant had probable cause to believe that one or more of the crimes enumerated above had been committed; (2) defendant was trying to "detain" the offender until the police arrived; and (3) the manner of detention was reasonable under the circumstances.

The existence of the first requisite is plain and need not detain us. Leaving aside the misdemeanors that defendant had grounds to believe Becker had committed, there was evidence from which a jury could find that defendant had probable cause to believe that Becker had committed two felonies in his presence: larceny from the person, in violation of G.S. 14-72(b)(1), and assault with a deadly weapon [an automobile], inflicting serious injury, in violation of G.S. 14-32. But the other two requisites require more discussion.

Though defendant, perhaps because of his amnesia, did not testify that he was trying to detain Becker until the police came and did not intend to hit him, other evidence in support of this claim was presented, including the testimony about giving Becker a copy of the lease. That defendant yelled "stop him, catch him," got in front of Becker's car at first, as if to block his exit from the parking lot, and did not fire the gun then, when he was directly in front of the car with a clear shot, tends to show that defendant was trying to detain Becker. And that defendant had never fired a gun before and two of the three shots were into the air, even though the range was close, would warrant a jury in finding, it seems to us, that defendant was trying to scare Becker into not leaving the area, rather than shoot him. If a jury so found, they

could properly conclude, we believe, that under the exigent circumstances that then existed, the means used by defendant in attempting to detain Becker were reasonable. It is just as clear, however, that a jury could just as properly conclude to the contrary. Since that is the case, what defendant's purpose was and whether he acted reasonably or unreasonably are not questions of law for the court, but questions of fact for a jury. Thus, in our view, it was prejudicial error not to charge the jury as requested.

The State contends that *State v. Wall,* 304 N.C. 609, 286 S.E. 2d 68 (1982) requires that the trial judge's refusal to instruct be affirmed. We do not so understand that case. In *Wall,* a teenage girl that had not paid a convenience store for two six packs of beer that she had put in her car and who said she was going to get the money was shot after her car had left defendant's parking lot and therefore his control; also in that case, the defendant stated that he shot, not to detain the girl, but in the hope that it would cause her to bring the beer back. In this case, on the other hand, there is evidence defendant was trying to "stop" or "catch" the deceased, who was just a few feet away, still in defendant's parking lot, and inferentially still under his control. In *Wall* the victim, at most, was a petty misdemeanant that had done no physical harm to the defendant or anyone else, while in this case the victim had apparently committed two felonies — one involving an assault on defendant's person, the other an assault on defendant's wife with an automobile. Thus, defendant's case is different from *Wall's* and different rules of law apply to it. In *Wall* the circumstances clearly indicated that the defendant, instead of trying to detain the victim, shot her without any reasonable basis for doing so; but in this case, the circumstances permit contrasting inferences and the jury's determination is therefore necessary.

[2] The second question presented is whether the involuntary manslaughter conviction can stand. Since defendant was tried for first-degree murder, it was appropriate for the court to permit the jury to consider the lesser included offenses of second degree murder and voluntary manslaughter — but under the circumstances recorded here involuntary manslaughter was not a lesser included offense of the first-degree murder that he was charged with committing. *State v. Carson,* 51 N.C. App. 144, 275 S.E. 2d 221 (1981). "Involuntary manslaughter is the unintentional killing of a human being without malice, proximately caused by (1) an

unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). So far as we can determine, the record contains no evidence which tends to show that Becker died as the result of an unlawful act not amounting to a felony or as the result of an unlawful act that was not naturally dangerous to human life. Thus, it was error to permit the jury to consider an involuntary manslaughter verdict. While the State, in effect, concedes the error, they contend it favored defendant and was therefore harmless. Though such errors are not always prejudicial, we believe the one in this instance was. Our Supreme Court has held that where it appears that there is a "reasonable possibility" that the defendant would have been acquitted if the involuntary manslaughter issue had not been submitted, the error must be held prejudicial. *State v. Ray*, 299 N.C. 151, 167, 261 S.E. 2d 789, 799 (1980). This Court has also held: "It is difficult to submit an offense which is not a lesser included offense when there is no evidence to support it and then determine that if the jury had not convicted on the offense submitted, they would have convicted on another offense which did not have all the elements of the offense of which the defendant was convicted." *State v. Carson*, 51 N.C. App. 144, 146, 275 S.E. 2d 221, 222 (1981). In this instance there is a strong likelihood, in our judgment, that defendant would not have been convicted of any homicide if the involuntary manslaughter issue had not been submitted. This is because the court submitted a special verdict form to the jury, the jury answered that defendant was not guilty of first-degree murder, not guilty of second degree murder, and not guilty of voluntary manslaughter, and nothing in the record leads us to believe that any of these verdicts would have been different if involuntary manslaughter had not been added to the list. Defendant having been acquitted of all the homicide charges other than involuntary manslaughter, and we having held that there was no basis for that verdict and it was prejudicial error to submit it, the judgment in Case No. 82CRS34153 is reversed and the defendant is ordered discharged from the charge in that case.

Though the defendant's final question—whether the trial court's refusal to postpone the sentencing hearing from Friday afternoon to Monday morning was an abuse of discretion—need not be determined, it nevertheless concerns us. The jury returned

its verdict at approximately 3 o'clock on Friday afternoon, and the court asked if any evidence would be submitted before sentencing. Since defendant and his counsel had been engaged in the trial of guilt or innocence all week, they were not prepared to present evidence on the sentencing question at that moment and requested that the hearing be deferred until Monday. The court refused, stating that on Monday he had twenty civil cases waiting on him. Though the demands on the time of trial judges are very onerous, indeed, and they have broad discretion in conducting the business of the courts, the sentencing process, especially since the Fair Sentencing Act was adopted, is nevertheless an important part of any trial that must be fairly processed, and a hearing that a defendant has no opportunity to prepare for is not the kind of hearing that the Act requires.

Case No. 82CRS34153—reversed.

Case No. 82CRS63253—new trial.

Judges ARNOLD and JOHNSON concur.