STATE OF NORTH CAROLINA v. DAN LEMAR BLUE

No. 9312SC816

(Filed 7 June 1994)

**Homicide § 349 (NCI4th)— submission of second-degree murder—no objection—absence of plain error**

Even if the evidence in a homicide prosecution clearly established all of the elements of first-degree murder and would not support a charge of second-degree murder, the trial court's submission of second-degree murder as a possible verdict did not constitute plain error, and defendant may not assign error to the trial court's submission of second-degree murder to the jury, where the trial court announced at the charge conference that it

would submit verdicts of guilty of first-degree murder, guilty of second-degree murder, or not guilty, and defendant failed to object at the charge conference or at any time before the jury retired, since to allow a defendant who did not object to then use his choice at trial to gain reversal on appeal would afford a criminal defendant the right to appellate review predicated on invited error.

### Am Jur 2d, Homicide §§ 496, 497.

Appeal by defendant from judgment entered 26 May 1993 by Judge Joe Freeman Britt in Cumberland County Superior Court. Heard in the Court of Appeals 18 April 1994.

Defendant was indicted in a four-count indictment on charges of first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, attempted armed robbery, and conspiracy to commit armed robbery. The homicide case was tried as a noncapital first degree murder.

The State's evidence tended to show that at approximately 2:00 on the afternoon of 30 August 1992, the 16-year-old defendant and another young man named Brewington entered the East Coast Pawn Shop in Fayetteville. Defendant and Brewington purchased a Nintendo game cartridge from the clerk, Delmar Moses. As they were completing this purchase, two other customers entered the shop. Defendant and Brewington exchanged comments and left the store.

Minutes later, defendant and Brewington re-entered the shop. Jimmy Denning, one of the owners of the shop, waited on the two men as they selected another Nintendo game cartridge. Defendant and Brewington selected a game, and Denning removed it from the counter where it was kept and set it down for them. Defendant picked the game up and carried it as the three men went back to the sales counter where defendant laid the game down. While defendant and Brewington stood in front of the sales counter, Denning began to write a sales ticket for the game. Delmar Moses was standing behind Denning.

The record of evidence, which included a videotape of the shooting, shows that as Brewington was in the act of placing the tape on the counter, defendant, who was standing immediately to the right of Brewington and facing the counter, turned to his left and stepped back from Brewington. Brewington immediately drew a pistol from

his pocket and fired four quick shots in succession. One shot struck Denning below the heart, and two shots struck Moses, causing his immediate death. After firing the shots, Brewington immediately fled from the shop and was followed by defendant.

Brewington was apprehended when a female acquaintance called the Cumberland County Sheriff's Office and reported that Brewington had been shot. Defendant was not with Brewington at the time. Brewington agreed to telephone defendant in the presence of law enforcement officers and to allow them to record this call. The law enforcement officers later went to defendant's home, where they found the clothing defendant had worn in the pawnshop hidden behind the dresser in his room.

Miss Elisha Bath testified that in August of 1992, she had been going steady with a young man named Scott Fisher for about a year. Miss Bath was then 15 years old, and Fisher was 17 or 18. Fisher and defendant were friends. On 30 August 1992, Fisher was at Miss Bath's home. At one point during his visit, the two went into Miss Bath's parents' bedroom, where her father kept his handguns. Fisher was familiar with these guns and had fired them before. Fisher looked through the drawer where the guns were kept, but neither of them took a gun out of the room. Fisher later left, and Miss Bath went across the street to a babysitting job.

Miss Bath saw Fisher again that day when he and defendant came to the house where she was babysitting. They stayed only a few minutes. Miss Bath commented to defendant that Fisher looked uncharacteristically nervous, and defendant responded that nothing was wrong. Miss Bath did not see where they went when they left. Fisher returned alone a short while later to the house where Miss Bath was babysitting. He came into the house and pulled a gun wrapped in a yellow bandanna from under his shirt. He put the wrapped gun into Miss Bath's purse and left.

Miss Bath returned home when she finished babysitting and found Fisher and other members of her family there. Fisher asked her about the gun, and she told him it was in her purse. On Fisher's instructions, she took the gun out of her purse and got the holster from her parents' bedroom. She watched Fisher remove the gun from the bandanna and put it in the holster. Fisher took care not to leave any fingerprints on the gun as he did so. At Fisher's direction, Miss Bath replaced the gun in its holster in the drawer in her parents' room. Miss Bath testified that she did not know when the gun was

STATE v. BLUE

[115 N.C. App. 108 (1994)]

taken from her home. She also testified she kept her spare house key in Fisher's car. Tests revealed that Miss Bath's father's gun was the gun used by Brewington to shoot Denning and Moses. Defendant offered no evidence.

The jury found defendant guilty of second degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, attempted armed robbery, and conspiracy to commit armed robbery. Defendant was given the presumptive sentence of fifteen years for second degree murder, to be served consecutively to the presumptive sentence of fourteen years for attempted robbery with a firearm; the presumptive sentence of six years for assault with a deadly weapon with intent to kill inflicting serious injury, to be served consecutively to the second degree murder sentence; and the presumptive sentence of three years for conspiracy to commit robbery with a firearm, to be served concurrently with the six year sentence for assault with a deadly weapon.

*Attorney General Michael F. Easley, by Assistant Attorney General P. Bly Hall, for the State.*

*Parish, Cooke & Russ, by James R. Parish, for defendant-appellant.*

WELLS, Judge.

Pursuant to one of his assignments of error, defendant contends that the trial court erred in submitting to the jury second degree murder as a possible verdict because there was no evidence to support such a charge.

After the jury verdicts were returned, in the beginning stages of the charge conference, the trial judge stated that on the murder indictment, he would submit verdicts of guilty of first degree murder, or guilty of second degree murder, or not guilty. Defendant did not object then or at any time during the court's very thorough charge conference, or at any time before the jury retired.

Rule 10(b)(2) of our Rules of Appellate Procedure provides:

A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hear-

ing of the jury, and, on request of any party, out of the presence of the jury.

Thus, the standard of review we must employ is the "plain error" rule adopted by our Supreme Court in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). As the Court stated in *Odom*, the adoption of the "plain error" rule does not mean that an improper instruction will mandate reversal regardless of a defendant's failure to object at trial, because to so hold would negate Rule 10(b)(2). Even when the "plain error" rule is applied, an improper instruction will rarely justify reversal of a criminal conviction when no objection was made in the trial court. *Id.* In this case, we accept for the purpose of our ruling defendant's contention that the evidence clearly established all the elements of first degree murder: malice, premeditation, and deliberation. Had defendant objected at trial to submitting the second degree verdict to the jury, we would be required to reverse his conviction. *State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991). But to allow a defendant who does not so object to then use his choice at trial to gain reversal on appeal would afford a criminal defendant the right to appellate review, predicated on invited error. We refuse to recognize such a right. To do so would defy common sense and establish bad law. Accordingly, we hold that this defendant may not assign error in this appeal to the trial court's submitting the second degree verdict to the jury.

In his second, third, and fourth assignments of error, defendant challenges the sufficiency of the evidence to support his conviction of (1) attempted armed robbery, (2) conspiracy to commit robbery with a dangerous weapon, and (3) assault with a deadly weapon with intent to kill inflicting serious injury. Our review of the State's evidence, giving the State the benefit of all reasonable inferences to be drawn therefrom, persuades us that the evidence was more than sufficient to submit these charges to the jury. The evidence relating to the gun used in the killing, and the telling evidence of defendant's conduct in the pawn shop before and after the shooting deflate defendant's arguments on these assignments, and they are overruled.

We have considered defendant's argument that the trial court erred in instructing the jury on acting in concert, find it to be without sufficient merit to require discussion, and overrule it. For the reasons stated, we find no error in the trial.

There is one other aspect of defendant's appeal which merits our discussion. At trial, after judgments were pronounced at the jury's

verdicts, there ensued a discussion between the defendant, defendant's trial counsel, and the trial judge as to whether defendant chose to appeal his convictions. This discussion culminated in defendant's informing the trial judge that he chose not to appeal. As the record reveals, the judgments were entered and signed on 26 May 1992. In his brief, defendant states that he gave notice of appeal on 4 June 1992. The record on appeal includes appellate entries dated 4 June 1992, signed by the Honorable Coy E. Brewer, Jr., but contained no written notices of appeal as required by Rule 4 of the Rules of Appellate Procedure. Upon inquiry, we have determined that there are no written notices of appeal on file in the Office of the Clerk of Superior Court of Cumberland County, but only an entry in the Clerk's minutes of the proceedings at the 4 June 1992 session that defendant gave notice of appeal. Thus, defendant did not preserve his right to appeal his convictions; therefore, his appeal is not before us as a matter of right. Because defendant's purported appeal of his conviction of second degree murder presented a question of importance to the criminal jurisprudence of this State, we have determined that it is not in the public interest to dismiss defendant's appeal. *See* Rule 2 of the Rules of Appellate Procedure.

No error.

Judges JOHNSON and JOHN concur.