An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-131

Filed 7 January 2026

Wake County, No. 22CR200339-910

STATE OF NORTH CAROLINA

v.

GARY EARL JENKINS, Defendant.

Appeal by Defendant from judgment entered 13 October 2023 by Judge Thomas H. Lock in Wake County Superior Court. Heard in the Court of Appeals 14 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General J. Blake Norman, for the State.*

> *Lockamy Law Firm, by C. Scott Holmes, for Defendant-Appellant.*

CARPENTER, Judge.

Gary Earl Jenkins ("Defendant") appeals from judgment entered after a jury found him guilty of one count of second-degree murder. Defendant argues the trial court erred by: (1) denying Defendant's request to instruct the jury on involuntary manslaughter; (2) instructing the jury on flight; and (3) failing to exercise its discretion when denying the jury's request to review the transcript of Defendant's

testimony. After careful review, we discern no error.

## I. Factual & Procedural Background

On 18 April 2022, a Wake County grand jury indicted Defendant for one count of first-degree murder. On 9 October 2023, Defendant's case proceeded to trial and the evidence tended to show the following.

On 6 January 2022, Defendant gave Clifton McClam $10 to buy them both "some drugs." Approximately one hour later, McClam met Defendant in the parking lot of a convenience store. Defendant and McClam discussed the "money [Defendant] had given him" and McClam told Defendant that "he didn't have [Defendant's] money." In response, Defendant told McClam "[d]on't mess . . . with me no more," and walked away. Subsequently, McClam approached Defendant again. When McClam said that he did not owe Defendant anything, Defendant "mushed [McClam] on the side of the head." A security camera from the store captured part of the interaction between Defendant and McClam. Defendant and McClam briefly wrestled, Defendant "punched" McClam, and McClam "stumbl[ed]" out of frame of the security camera.

According to Defendant, while McClam was out of frame, McClam pulled out a "razor" or "box cutter" style knife and threatened to "cut [Defendant's] head off." Defendant told McClam, "I ain't scared of you" and "I'll kill you, man." Defendant then pulled out his own knife, but later testified that he was not "planning on" killing McClam. Defendant testified that he and McClam "grab[bed] each other [by] the

collar," McClam "cut [Defendant] across the finger," and Defendant "came down and . . . stabbed [McClam]" in self-defense. Defendant explained he "knew" McClam was hurt because "he let go of [Defendant]." Defendant released McClam and McClam fell to the ground. Defendant "looked down" at McClam, then "just walked away." Moments later, Defendant realized he dropped his glasses, so he returned to pick them up. Defendant later discarded his knife.

The convenience store clerk saw the "fight break out" and called 9-1-1 after bystanders told him that McClam was lying in front of the clerk's truck in the parking lot. Officers with the Raleigh Police Department arrived on scene, and McClam was transported to the hospital, where he ultimately died. Officers did not recover a knife from McClam. The medical examiner testified that McClam was stabbed once in the "left back side" of his abdomen, which perforated his large intestine and left kidney, "completely severed" his abdominal aorta, and caused his death. On 12 February 2022, more than one month after McClam's death, Defendant turned himself in because he "felt like [he] might as well get it over with, and [he] knew it was self-defense anyway." Defendant knew there was a warrant out for his arrest, and he thought the convenience store "had the whole thing on camera."

During the charge conference, Defendant requested a jury instruction on involuntary manslaughter and objected to the State's proposed instruction on flight. The trial court denied Defendant's request for an involuntary manslaughter instruction but instructed the jury on flight. During deliberations, the jury made

three requests to review evidence.  The trial court allowed the jury's requests to review two portions of the security camera footage but denied the jury's request to review the transcript of Defendant's testimony.  Outside of the jury's presence, the trial court explained that the court reporter "expressed some concern that transcribing [Defendant's] testimony would take longer than transcribing the testimony of most witnesses because of his speech patterns and the way in which he spoke while on the stand."  Defendant objected to the trial court's denial of the jury's request for the transcript.  The trial court conducted the jury to the courtroom and stated:

> [T]here is a court reporter present who takes down everything that is said in the court. . . . [P]lease understand that the machine that she uses cannot just instantly produce an edited, error-free copy of a transcript.  It requires quite a bit of work on her part.  I have made [an] inquiry, and, frankly, it will take a number of hours for her to produce a transcript of the testimony of . . . [Defendant].  So in the exercise of the Court's discretion, I'm going to have to decline that request.  I would remind you that it is your duty to recall the evidence in the case whether it was called to your attention or not by the attorneys during their arguments.

On 13 October 2023, the jury found Defendant guilty of second-degree murder.  The trial court sentenced Defendant in the mitigated range to a minimum active term of 300 months and a corresponding maximum of 372 months in the custody of the Department of Adult Correction.  Defendant gave oral notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) denying Defendant's request to instruct the jury on involuntary manslaughter; (2) instructing the jury on flight; and (3) failing to exercise its discretion when denying the jury's request to review the transcript of Defendant's testimony.

## IV. Analysis

### A. Involuntary Manslaughter Instruction

First, Defendant argues the evidence supported an instruction for the lesser-included offense of involuntary manslaughter because Defendant testified he did not intend to kill McClam. We disagree.

"Where a defendant has properly preserved [a] challenge to jury instructions, [this Court] reviews the trial court's decisions regarding jury instructions de novo." *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"[W]hen there is evidence tending to support a verdict of guilty of an included

crime of lesser degree than that charged, the trial court must instruct the jury that it is permissible for them to reach such a verdict if it accords with their findings." *State v. Brichikov*, 383 N.C. 543, 553, 881 S.E.2d 103, 111 (2022). We review the evidence presented at trial to determine whether any evidence, viewed in the light most favorable to the defendant, "would permit a rational jury to acquit the accused of the greater charge and convict him or her of the lesser offense." *Id.* at 553, 881 S.E.2d at 111.

Second-degree murder requires "the (1) unlawful killing (2) of a human being (3) with malice, but without premeditation and deliberation." *State v. Vassey*, 154 N.C. App. 384, 390, 572 S.E.2d 248, 252 (2002). "Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury." *State v. Powell*, 336 N.C. 762, 767, 446 S.E.2d 26, 29 (1994) (citations omitted). Involuntary manslaughter "may also be defined as the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *Id.* at 767, 446 S.E.2d at 29. "[E]vidence tending to show the occurrence of a killing caused by the negligent or reckless use of a deadly weapon without any intent to inflict death or serious injury is sufficient to support an involuntary manslaughter conviction." *State v. Debiase*, 211 N.C. App. 497, 508, 711 S.E.2d 436, 443 (2011) (citations omitted); *see State v. Daniels*, 87 N.C. App. 287, 289, 360 S.E.2d 470, 471

(1987) (holding that evidence tending to show a defendant "inadvertently" stabbed a victim "while not attempting or intending to do so" supports an involuntary manslaughter instruction).

Defendant contends the instant case is analogous to *State v. Drew*, 162 N.C. App. 682, 592 S.E.2d 27 (2004). In *Drew*, the defendant's statements tended to support that he had a knife in his hand and reflexively swung when he was surprised in the bathroom by an intruder, the victim, who lunged at him. 162 N.C. App. at 686, 592 S.E.2d at 30. Further, the evidence tended to show the defendant immediately ran away in fear, did not know that he had stabbed the victim in the chest, and was "hysterical" when the police arrived. *Id.* at 686, 592 S.E.2d at 30. We determined the trial court did not err by submitting the charge of involuntary manslaughter to the jury because the evidence tended to show that the defendant either reacted instinctively with no intent to strike the victim, or intended to strike at the victim to keep him away but not to kill or injure him with the knife. *Id.* at 687, 592 S.E.2d at 30.

Although Defendant maintains that he "unintentionally, instinctively or reflexively stabbed . . . McClam," the evidence tends to show that Defendant told McClam "I'll kill you" in the moments before Defendant voluntarily "made a decision" to pull out a knife and physically engage with McClam. Defendant explained that he "stabbed" McClam in self-defense after McClam "cut [Defendant] across the finger . . . ." Self-defense is an intentional action done by a person because he or she reasonably

believed the action was necessary to defend against imminent death or serious physical injury. *See State v. Norman*, 324 N.C. 253, 259–60, 378 S.E.2d 8, 12 (1989). Finally, Defendant testified that he "knew" he "had stabbed [McClam]" and that McClam was hurt. Viewed in the light most favorable to Defendant, none of the evidence presented at trial tends to show that Defendant unintentionally stabbed McClam. *See Debiase*, 211 N.C. App. at 508, 711 S.E.2d at 443; *Daniels*, 87 N.C. App. at 289, 360 S.E.2d at 471; *cf. Drew*, 162 N.C. App. at 686–87, 592 S.E.2d at 30. As a result, "a rational jury" could not "acquit the [Defendant] of the greater charge and convict him . . . of the lesser offense" of involuntary manslaughter. *See Brichikov*, 383 N.C. at 553, 881 S.E.2d at 111; *Powell*, 336 N.C. at 767, 446 S.E.2d at 29. Accordingly, the trial court did not err by denying Defendant's request to instruct the jury on involuntary manslaughter. *See Brichikov*, 383 N.C. at 553, 881 S.E.2d at 111.

**B. Flight Instruction**

Next, Defendant argues the evidence presented at trial was insufficient to support a flight instruction because Defendant did not take steps to avoid apprehension. We disagree.

"Where a defendant has properly preserved [a] challenge to jury instructions, [this Court] reviews the trial court's decisions regarding jury instructions de novo." *Richardson*, 270 N.C. App. at 152, 838 S.E.2d at 473. "[A] trial court may not instruct a jury on defendant's flight unless there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged."

*State v. Levan*, 326 N.C. 155, 164–65, 388 S.E.2d 429, 433–34 (1990) (citation and quotation marks omitted). "Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight." *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991). Instead, "[t]he relevant inquiry is whether the evidence shows that defendant left the scene of the crime and took steps to avoid apprehension." *State v. Grooms*, 353 N.C. 50, 80, 540 S.E.2d 713, 732 (2000).

Evidence tending to show a defendant left the scene of the crime "without rendering any assistance to the victim or seeking to obtain any medical aid for him" is relevant to whether the defendant took steps to avoid apprehension. *State v. Beck*, 346 N.C. 750, 758, 487 S.E.2d 751, 757 (1997). Further, evidence tending to show that a defendant disposed of the weapon used in commission of the offense supports that the defendant took steps to avoid apprehension. *See State v. Nixon*, 117 N.C. App. 141, 152, 450 S.E.2d 562, 568 (1994). Finally, a defendant's delayed surrender to law enforcement is relevant to whether the defendant took steps to avoid apprehension. *See State v. Fisher*, 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994); *State v. Lloyd*, 354 N.C. 76, 119–20, 552 S.E.2d 596, 626.

Here, Defendant testified he "stabbed" McClam, knew McClam was hurt, and "just walked away." Bystanders, not Defendant, alerted the store clerk who called 9-1-1. Defendant left the scene of the crime without rendering assistance to McClam. *See Beck*, 346 N.C. at 758, 487 S.E.2d at 757. In addition, Defendant admitted that he disposed of the weapon used in the crime. *See Nixon*, 117 N.C. App. at 152, 450

S.E.2d at 568.  Finally, Defendant testified he knew a warrant was out for his arrest but waited over a month before turning himself in.  *See Fisher*, 336 N.C. at 706, 445 S.E.2d at 878; *Lloyd*, 354 N.C. at 119–20, 552 S.E.2d at 626.  Thus, the evidence tended to show Defendant fled the scene of the crime and took steps to avoid apprehension.  Accordingly, the trial court did not err by instructing the jury on flight. *See Thompson*, 328 N.C. at 490, 402 S.E.2d at 732; *Grooms*, 353 N.C. at 80, 540 S.E.2d at 732.

**C. Request to Review Evidence**

Finally, Defendant argues the trial court "failed to exercise its discretion" because it denied the jury's request to review a transcript of Defendant's testimony based "solely on the unavailability of the transcript" and without "consider[ing] the option of reading the testimony" to the jury.  The State contends that the trial court "clearly and explicitly" stated it was exercising its discretion in denying the jury's request.  We agree with the State.

"A trial court's ruling in response to a request by the jury to review testimony or other evidence is a discretionary decision, ordinarily reviewable only for an abuse thereof."  *State v. Vann*, 386 N.C. 244, 250, 900 S.E.2d 638, 643 (2024) (citations and quotation marks omitted).

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion . . . may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open

court the requested materials admitted into evidence.

N.C. Gen. Stat. § 15A-1233(a) (2023). When a deliberating jury requests to review evidence, a trial court has two duties. *State v. Ashe*, 314 N.C. 28, 34, 331 S.E.2d 652, 656 (1985); N.C. Gen. Stat. § 15A-1233(a). First, the trial court must bring all jurors into the courtroom. *Id.* at 34, 331 S.E.2d at 656. Second, "the trial court must exercise its discretion in determining whether to permit requested evidence to be read or examined by the jury." *Id.* at 34, 331 S.E.2d at 656. "When the trial court states for the record that, in its discretion, it is allowing or denying a jury's request to review testimony, it is presumed that the trial court did so in accordance with [N.C. Gen. Stat. § 15A-1233]." *State v. Weddington*, 329 N.C. 202, 208, 404 S.E.2d 671, 675 (1991).

On the other hand, a trial court errs if it fails "to exercise its discretion in the erroneous belief that it has no discretion as to the question presented." *State v. Starr*, 365 N.C. 314, 317, 718 S.E.2d 362, 365 (2011) (citations and quotation marks omitted). The trial court may indicate that it believes it has no discretion where it states that it does not "have the ability," *State v. Barrow*, 350 N.C. 640, 647, 517 S.E.2d 374 (1999), or that it is "not allowed" to provide a requested transcript, *State v. Ford*, 297 N.C. 28, 31, 252 S.E.2d 717 (1979). Further, an indication that a requested transcript "is not available," without a determination of "whether the transcript should have been available," may indicate a failure to exercise discretion. *State v. Lang*, 301 N.C. 508, 511, 272 S.E.2d 123, 125 (1980).

By beginning its ruling with "in the exercise of the Court's discretion," the trial court presumptively complied with section 15A-1233. *See Weddington*, 329 N.C. at 208, 404 S.E.2d at 675; N.C. Gen. Stat. § 15A-1233(a). Presumption notwithstanding, we have explained the trial court may, as it did here, consider "the time, practicality, and difficulty involved with granting the [jury's] request." *See State v. Perez*, 135 N.C. App. 543, 555, 522 S.E.2d 102, 110 (1999). Further, the trial court demonstrated its discretion by allowing the jury's two requests to review other evidence. *See State v. Lewis*, 321 N.C. 42, 51–52, 361 S.E.2d 728, 734 (1987) (holding that the trial judge exercised discretion in considering the jury's requests by "allow[ing] one and den[ying] the other").

Thus, the record reflects the trial court understood its decision concerning the jury's request was discretionary. *See Perez*, 135 N.C. App. at 555, 522 S.E.2d at 110; *cf. Starr*, 365 N.C. at 317, 718 S.E.2d at 365. The record further reflects that the trial court exercised its discretion in denying the jury's request. *See Weddington*, 329 N.C. at 208, 404 S.E.2d at 675; *Lewis*, 321 N.C. at 51–52, 361 S.E.2d at 734; *Corbett*, 339 N.C. at 338, 451 S.E.2d at 265. Accordingly, the trial court did not abuse its discretion in denying the jury's request to review a transcript of Defendant's testimony. *See Ashe*, 314 N.C. at 34, 331 S.E.2d at 656; *Vann*, 386 N.C. at 255–56, 900 S.E.2d at 646–47.

## V. Conclusion

The trial court did not err by denying Defendant's request to instruct the jury on involuntary manslaughter to the jury. The trial court also did not err by instructing the jury on flight. Finally, the trial court exercised its discretion in denying the jury's request to review Defendant's testimony. Accordingly, we discern no error.

NO ERROR.

Judges TYSON and ARROWOOD concur.

Report per Rule 30(e).